**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Savannah Brady, | ) CIV 16-04436-PHX-MHB |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Savannah Brady's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

On March 31, 2011, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act. On April 20, 2012, she also filed an application for supplemental security income pursuant to Title XVI of the Social Security Act. In both applications, she alleged disability beginning April 21, 2009. These claims were denied initially and upon reconsideration. Thereafter, Plaintiff requested a hearing, and on December 13, 2012, she appeared and testified before an ALJ. On January 18, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

On September 8, 2014, the Appeals Council reviewed the case and remanded the matter directing the ALJ to further evaluate Plaintiff's mental impairments in accordance

with the special technique; give further consideration to Plaintiff's maximum residual functional capacity; and expand the record obtaining supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's ability to perform the demands of her past relevant work, and, as necessary, the occupational base for other work. (Tr. at 192-93.)

The ALJ held a second hearing pursuant to the Appeals Council's remand order on April 1, 2015, and issued a decision finding that Plaintiff was not disabled on May 13, 2015. (Tr. at 48-85, 21-47.) The Appeals Council denied Plaintiff's second request for review, making the ALJ's decision the final decision of the Commissioner. Thereafter, Plaintiff sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. See id. In determining whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." Id. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in this context. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. See id. The claimant usually bears the burden of showing that an error is harmful. See id. at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing ... inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

### III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 21, 2009 – the alleged onset date. (Tr. at 26.) At step two, he found that Plaintiff had the following severe impairments: status post motor vehicle accident resulting

- 3 -

in traumatic brain injury, mood disorder, bipolar disorder, and unspecified personality disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. at 26.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 27-28.) After consideration of the entire record, the ALJ found that Plaintiff retained the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carry out simple instructions and repetitive tasks, with mild difficulty interacting with the public and coworkers, and moderate difficulty interacting with supervisors, and with the ability to tolerate no more than moderate changes in a routine work setting. Moderate is more severe than mild, which is non-severe but is defined as affects ability to perform but can still perform satisfactorily."[1] (Tr. at 28-36.) The ALJ found that Plaintiff is capable of performing past relevant work that does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (Tr. at 36-37.) Thus, the ALJ concluded that Plaintiff has not been under a disability from April 21, 2009, through the date of his decision. (Tr. at 37.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to properly consider her subjective complaints. Plaintiff requests that the Court remand for determination of benefits.[2]

\\\

\\\

---

[1] "Residual functional capacity" (or "RFC") is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

[2] Plaintiff additionally argues that the ALJ erred in failing to classify any of her physical impairments as "severe" and failed to include these exertional limitations in his RFC determination.

- 4 -

**A.  Medical Opinion Evidence**

Plaintiff contends that the ALJ erred by improperly weighing medical opinion evidence. Plaintiff specifically states that the ALJ failed to properly weigh the opinions of psychologists Donald Nockleby, Ph.D. and Jennifer Wethe, Ph.D.; treating sources Madison Rhodes, MA, LPC; Danica Oparnica, CANP, PMHNP; Mariane Ludwig, D.C.; Ravi BajPai, D.O.; and third parties Peg Forest (University Dean) and Tammie Brady (Mother).

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But, the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. See Andrews, 53 F.3d at 1040-41; see also 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. See Lester, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Physician's assistants, nurse practitioners, chiropractors, and similar providers are medical professionals, but they are not considered "acceptable medical sources," under the Social Security regulations (the regulations were later amended – the amendments are not applicable here). 20 C.F.R. § 404.1513(d)(1). Rather, these medical professionals are considered "other sources." Id. The distinction between "other sources" and "acceptable medical sources" is significant because only "an acceptable medical source" may be considered a "treating source." 20 C.F.R. §§ 404.1502. Thus, these "other sources" are not entitled to the same deference as "acceptable medical sources." Molina, 674 F.3d at 1111. The ALJ may discount testimony from "other sources" simply by giving "reasons germane to each witness for doing so." Id. (citations and internal quotations omitted).

Similarly, in determining whether a claimant is disabled, an ALJ must consider lay witness or third-party testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so only upon providing specific reasons that are "germane to each witness." Id. (quoting Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable

1 ALJ, when fully crediting the testimony, could have reached a different disability
2 determination." Stout, 454 F.3d at 1056.

3 Since the acceptable treating source opinions Plaintiff relies upon were contradicted
4 by other treating source opinions (Drs. Levison, Rabara, and Kemper), as well as, other
5 objective medical evidence of record, the specific and legitimate standard applies.

6 **1.  Donald Nockleby, Ph.D.**

7 According to the record, Dr. Nockleby examined Plaintiff in December 2011 (Tr. at
8 33, 942-955), and completed two later opinions regarding Plaintiff's functioning (Tr. at 33,
9 1014-1015, 1051-1052). Testing of psychological and physical abilities showed Plaintiff's
10 motor skills to be "severely impaired" on the right side, and to be "low average" on the left.
11 Plaintiff's mental processing speed was "moderately to severely" impaired in the written
12 format and "borderline" to mildly impaired in the oral format. (Tr. at 949.) Dr. Nockleby
13 noted that Plaintiff had cognitive and self-management/executive skill deficits resulting from
14 traumatic brain injury ("TBI"); and limitations in stress tolerance and interactions with mood
15 complicated by a personality disorder. Dr. Nockleby found limitations to interfere with
16 maintaining a job at any level (Tr. at 954), and concluded that competitive employment
17 "should not be an early goal," with volunteering as an option to start, and only if that is
18 successful should Plaintiff even attempt a low-stress, part-time job (Tr. at 954). After
19 treatment and some rehabilitation, Dr. Nockleby opined that residuals from the TBI
20 remained. Plaintiff had severe restriction in her ability to relate to other people and severe
21 restriction in her ability to respond to customary work pressure; and moderately severe
22 restriction in a number of other work-related areas such as responding appropriately to
23 supervision. (Tr. at 1014-15, 1051-52.) Dr. Nockleby opined that, in a full time work setting,
24 Plaintiff would be off task 21% of the time. (Tr. at 1014-15, 1051-52.)

25 The ALJ afforded Dr. Nockleby's opinion little weight, stating that Dr. Nockleby
26 examined Plaintiff on one occasion, and finding that his opinion is unsupported by his notes.
27 The ALJ stated that the doctor's "opinion remains in contrast to his statement among the
28

evaluation that her psychiatric needs were well covered and when ready, she should be involved with transition work activities under monitoring of a job coach."

An ALJ may only reject an examining physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Id. (citing Embrey, 849 F.2d at 421-22). Here, the ALJ supported his conclusion by citing one example that the Court fails to find inconsistent. The ALJ erred by not identifying specific conflicting clinical evidence, and then explaining why his interpretation of that conflicting evidence, rather than Dr. Nockleby's, was correct. The ALJ's conclusory statement is insufficient. See Reddick, 157 F.3d at 725.

**2.     Jennifer Wethe, Ph.D.**

Dr. Wethe completed two psychological assessments with regard to Plaintiff's functioning. (Tr. at 807-811, 842-848.) During this time period, Plaintiff was living with her grandmother, having only partially decompensated as evidenced by self-harm activity. Plaintiff was displaying parasuicidal behavior and remained in psychotherapy. On examination, Plaintiff had difficulty with balance due to residual right hemiparesis. She had much more severe depression and anxiety as compared to one year prior. (Tr. at 846.) Although she had made impressive recovery given the severity of injury, she displayed greater impairment and functional limitations. (Tr. at 846.) She had a severe degree of emotional distress. If to attempt school, accommodations would be needed. Intensive treatment with dialectical behavior therapy and inpatient residential care were supported. (Tr. at 847.)

Other than citing to a multi-page exhibit in the administrative record, the ALJ failed to mention the findings or weigh the medical opinion of Dr. Wethe. The ALJ's failure to consider said opinion in conjunction with his review of the record as a whole constitutes error.

\\\

**3.    Madison Rhodes, MA, LPC and Danica Oparnica, CANP, PMHNP**

In addition to her treatment notes, LPC Rhodes provided a narrative statement explaining that Plaintiff was status post TBI and required weekly counseling for significant emotional disturbances. Plaintiff was in need of assistance to maintain daily activities; and was to continue to receive intervention from healthcare providers, her group home, and her family. (Tr. at 858.) LPC Rhodes opined that Plaintiff would have several significant work-related mental limitations. (Tr. at 1125-26.)

Also, in addition to her treatment notes, NP Oparnica wrote a narrative attesting to Plaintiff's depressive symptoms, panic disorder, and possible borderline personality disorder with a history of traumatic head injury in April 2009. NP Oparnica noted that Plaintiff suffers from mood swings, depression, and self-injurious behavior. (Tr. at 860.) She stated that Plaintiff needs to live in a supervised setting and progress slowly. She stated that Plaintiff is unable to engage in full or part-time employment, but that Plaintiff "may eventually be able to go back to school and complete her education, but at this time I am unable to estimate how long that would be." (Tr. at 860.)

The ALJ gave LPC Rhodes little weight. The ALJ found that LPC Rhodes' asserted restrictions were not supported by her own notes. He stated that notes from LPC Rhodes reflect that Plaintiff is generally independent with activities of daily living and has been asked to transfer to a higher functioning group home. The ALJ mentioned that LPC Rhodes' notes contained occasional complaints "of difficulty getting along with peers, yet there was no mention of any decreased attention and concentration, as was reported on [the] medical source statement." The ALJ also found that the course of treatment pursued by LPC Rhodes was not consistent with what one would expect if the claimant were disabled.

As to NP Oparnica, the ALJ found that her opinion was generally without support from the treatment notes and seemed to rely quite heavily on Plaintiff's subjective complaints. The ALJ found that NP Oparnica's own observations found Plaintiff alert, oriented, and cooperative, with good eye contact, logical associations, relaxed mood, appropriate affect, good concentration, improved insight, and fair to good judgment. NP

Oparnica did not offer changes to the medication regimen, suggesting that it was effective. Therefore, the ALJ found NP Oparnica's opinion unsupported and was given little or no weight.

The ALJ failed to offer germane reasons for rejecting LPC Rhodes' assessment. Here, the ALJ improperly relied on selective portions of LPC Rhodes' treatment notes making generalized conclusions about the treatment notes as a whole, and finding inconsistency therein. The Court fails to find any inconsistency noted by the ALJ in LPC Rhodes' treatment notes, medical assessment, and narrative statement.

Similarly, the ALJ failed to offer germane reasons for rejecting NP Oparnica's conclusions. The ALJ noted that NP Oparnica's conclusion stating that Plaintiff could not "engage in full or part time employment" was in conflict with her own observations that Plaintiff was alert, oriented, and cooperative, with good eye contact, logical associations, relaxed mood, appropriate affect, good concentration, improved insight, and fair to good judgment. The Court fails to find an inconsistency between Plaintiff's ability to engage in full or part time employment and the fact that she was alert, oriented, cooperative, relaxed, and the like. Further, there is no support for the finding that NP Oparnica relied heavily on Plaintiff's symptom reporting. The ALJ's conclusory statement is insufficient. Lastly, the record reflects that NP Oparnica did adjust Plaintiff's medications – contrary to the ALJ's finding.

### 4. Mariane Ludwig, D.C.

In October 2011, Dr. Ludwig wrote a narrative explaining that Plaintiff was involved in a motor vehicle accident, suffered a TBI, was in a coma and hospitalized for 72 days. (Tr. at 1223.) Dr. Ludwig opined to residuals from the accident injuries, including weakness to the right arm and leg, difficulty concentrating, easy distractibility, and irritability and anxiety. He noted that Plaintiff attempted to go to school, and failed due to her medical limitations; and opined that Plaintiff will be unable to secure employment in any position that is necessary for her to support herself.

1       The ALJ gave Dr. Ludwig's opinion no weight finding that the objective record fails to show that Plaintiff continues to experience poor balance, right sided weakness, or inability to sustain physical activity. The ALJ also stated that the record fails to establish that Plaintiff experiences debilitating memory and concentration lapses, with the inability to sustain simple tasks.

      Inconsistency with medical evidence is a germane reason for discrediting the opinion of Dr. Ludwig. See Bayliss, 427 F.3d at 1218. The Court finds no error.

### 5. Ravi BajPai, D.O.

      In September 2001, treating physician, Dr. Bajpai, submitted a narrative and explained that Plaintiff was status post motor vehicle accident resulting in motor and cognitive deficits. (Tr. at 861.) He opined that Plaintiff has not reached her goal of returning to full capacity, and that Plaintiff continues to require assistance and aid.

      The ALJ gave this opinion little weight finding that his statements were vague and imprecise, and no specific work restrictions.

      The ALJ failed to provide specific and legitimate reasons for affording this opinion little weight. See Reddick, 157 F.3d at 725. The ALJ's conclusory statement without identifying specific conflicting clinical evidence is insufficient.

### 6. Peg Forest (University Dean)

      In her assessment of Plaintiff, Dean Forest noted that Plaintiff tried to find a healthy balance between physical and mental disability, and attempted to advance career goals. To assist, Dean Forest provided accommodations to Plaintiff to help her move toward a degree. Dean Forest stated that the effects of Plaintiff's TBI hindered her in multiple ways. Plaintiff had trouble focusing, keeping up with schedules, maintaining healthy boundaries, and relating to peers. (Tr. at 499.) Plaintiff's emotions were "a roller coaster of extremes." Plaintiff needed treatment and guidance in an environment where she could be "carefully monitored and facilitated." Dean Forest determined that Plaintiff was unable to continue studies or hold down a responsible position of work.

The ALJ considered Dean Forest's opinion and found that she did not treat Plaintiff for any of her medically determinable impairments. The ALJ stated that Dean Forest did not know Plaintiff for a significant length of time and did not review any medical records.

The Court finds that the ALJ failed to provide germane reasons for disregarding Dean Forest's assessment. There is no requirement that a third party be medically trained, treat a claimant, or review medical records before forming an opinion.

### 7. Tammie Brady (Mother)

Tammy Brady reported physical and psychological deficits. (Tr. at 427). She stated that she cares for Plaintiff "24 hours a day/7 days a week." She stated that Plaintiff needs assistance in completing activities of daily living and a need for extra supervision.

The ALJ found Ms. Brady's assessment "unpersuasive." This one-word reasoning is not germane. Thus, the Court finds error.

## B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[3] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

At the hearing held on April 1, 2015, Plaintiff reported and testified to symptoms of her traumatic brain injury and bipolar disorder. (Tr. at 63.) Plaintiff has trouble focusing and completing tasks, feeling "frazzled." (Tr. at 64.) She has grandiose thoughts, wanting to travel, be a mom, and write a book, but she can't even hold down a job. (Tr. at 65.) She attempted college, lasting 1½ semesters, receiving handicap accessible housing, a computer so she did not have to write, and extra time for test taking. (Tr. at 67.) With these accommodations, after the first semester of 2 classes, Plaintiff felt "super smart." She then signed up for 5 classes, became overwhelmed, wanted to kill herself, and dropped out, with

---

[3] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1  the Dean of the University finding that Plaintiff could not maintain a sustained pace due to
2  mental impairment. (Tr. at 67.)

3  Plaintiff described her medical limitations. She resides in a group home where staff
4  takes her to appointments, helps her to open bottles and curl her hair, assists her with laundry,
5  provides her with meals, and monitors her medications. (Tr. at 68-69.) Plaintiff is the
6  youngest in the group home by 30 years (Tr. at 69.) She has conflicts with others and has to
7  work "really, really, really hard at keeping the peace and not skinning people alive." (Tr. at
8  70.) She lacks boundaries, making inappropriate comments, embarrassing herself. (Tr. at 70.)
9  She sometimes flips out, yells, and acts very immature. (Tr. at 70-71.) Her mother is her
10 guardian and handles her finances. (Tr. at 71.) Plaintiff does not handle her own money, and
11 is not stable enough to live on her own. (Tr. at 71.)

12 The ALJ found Plaintiff not entirely credible. (Tr. at 30-32.)

### 1. Inconsistent Statements in the Record

14 First, the ALJ appears to refer to inconsistent and unsupported statements in the record
15 to detract from Plaintiff's credibility. "In determining credibility, an ALJ may engage in
16 ordinary techniques of credibility evaluation, such as considering ... inconsistencies in
17 claimant's testimony." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ
18 cites to a few examples finding that although Plaintiff testified to difficulties sleeping, she
19 told Dr. Rabara that she falls asleep quickly and sleeps well throughout the night. (Tr. at 30,
20 74, 1200.) Although she reported difficulties interacting with others, she also stated that she
21 has "lots of social interactions, both in real life and on Facebook." (Tr. at 30, 77-78, 1200.)
22 She stated at the hearing that she has "trouble keeping focus and completing tasks" (Tr. at
23 64), but told Dr. Rabara that her attention, concentration and memory are "okay," and that
24 she "can usually multitask" (Tr. at 30, 64, 1200). Plaintiff also told the agency she could not
25 drive because of her disabilities (Tr. at 32, 446), but told her doctor that she did not drive
26 because she did not have the money to buy a car (Tr. at 32, 845). One doctor also noted some
27 of Plaintiff's reasons for not working were unsound, including her desire to eat 5-6 times per
28 day, urinary urgency, and frequency of bathroom use (Tr. 32, 845).

The Court finds that the ALJ's limited sample of inconsistencies is somewhat selective, and is not demonstrative of the record as a whole. The ALJ's isolated examples do not clearly or convincingly support the ALJ's conclusion that Plaintiff's testimony should be discounted.

### 2. Activities of Daily Living

Next, the ALJ determined that Plaintiff's allegations regarding her impairments do not interfere with her activities of daily living. An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. See Burch, 400 F.3d at 681. But, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014). Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn, 495 F.3d at 639 (emphasis added).

Here, the ALJ provided a list of Plaintiff's activities of daily living, including, self-care, maintaining personal hygiene, eating breakfast, shopping for groceries, cleaning her room, doing her laundry, washing dishes, sweeping, initiating phone calls, attending church, "maintain[ing] contact with at least fifty friends," searching for employment in 2010, attempting to volunteer, and attempting to work at a day care center. (Tr. at 30-32.)

The ALJ found that the physical and mental capabilities requisite to performing many of the tasks, as well as the social interactions, replicate those necessary for obtaining and maintaining employment. Thus, the ALJ found that these activities belie Plaintiff's allegations and, instead, support his conclusions.

The Court finds that the ALJ erred in his finding. First, rather than explaining how Plaintiff's activities detract from Plaintiff's testimony, and providing an analysis of why Plaintiff's activities were inconsistent with the limitations asserted by Plaintiff, the ALJ

simply dismisses her allegations. The listing of activities and implying that said activities are performed consistently and regularly over an eight hour day is insufficient. See Garrison, 759 F.3d at 1016. Indeed, the ALJ failed to consider that these activities are performed inconsistently and with breaks, supervision or failure. The record reflects that Plaintiff attempted to get her old fast-food job back but the manager could not hire her because of her physical limitations. Plaintiff attempted to work in her school library but it "was kind of a bust." (Tr. at 59-60.) Plaintiff had been attempting to write a book for three years but had trouble focusing when trying to write. (Tr. at 65.) Plaintiff attempted to go to school but dropped out because she was harming herself and feeling overwhelmed. (Tr. at 67.)

Plaintiff has caretakers to "help [her] with everyday tasks, from opening bottles to curling [her] hair." (Tr. at 68.) They carried heavier objects like her laundry basket to the laundry room, reminded her to eat meals, and administered medications. (Tr. at 68-69.) As far as volunteering, "it was just physically too much, and [she] had several emotional breakdowns." Plaintiff described what she calls "house arrest" because she is "unable to walk to the bus stop and take the bus down the road." (Tr. at 73.)

Thus, the Court finds that the ALJ's discounting of Plaintiff's credibility due to Plaintiff's activities of daily living is not clear and convincing.

### 3. **Objective Medical Evidence and Conservative Treatment**

Next, the ALJ found that the objective findings, diagnostic studies, treatment modalities, and treatment record as a whole illustrate that Plaintiff's limitations were not debilitating.

While an ALJ may reject a Plaintiff's testimony about the severity of her symptoms, he must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims." Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009). And, as the Ninth Circuit has made clear, if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Further, with regard to

treatment, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra, 481 F.3d at 751. Lastly, impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (citing Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).

As noted by the Court earlier in this decision, the ALJ failed to properly consider much of the opinion evidence in this case. Nevertheless, in his decision, the ALJ did provide a thorough discussion of the objective medical evidence specifically citing to exhibits in the administrative record and identifying multiple inconsistencies between the evidence and Plaintiff's allegations of pain and limitations. The Court finds that the inconsistencies identified between Plaintiff's testimony and the objective medical record are a clear and convincing reason to discount parts of Plaintiff's testimony.

In summary, however, the Court finds that the ALJ has failed to provide a sufficient basis to find Plaintiff's allegations not entirely credible. While perhaps some inconsistency with the medical evidence could arguably detract from Plaintiff's credibility, this factor viewed in isolation is not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations as a whole. Thus, the Court concludes that the ALJ has failed to support his decision to discredit Plaintiff's credibility with specific, clear and convincing reasons and, therefore, the Court finds error.

The Court declines to address Plaintiff's remaining arguments.

## V. CONCLUSION

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as true. See Lester, 81 F.3d at 834. Similarly, where the ALJ improperly rejects a claimant's testimony regarding her limitations, and the claimant would be disabled if her testimony were credited, "we will not

remand solely to allow the ALJ to make specific findings regarding that testimony." Id. An action should be remanded for an award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. See Garrison, 759 F.3d at 1020. Even where these conditions are met, the court may, nevertheless, exercise "flexibility" in applying the credit-as-true rule and remand for further proceedings where remand would permit the ALJ to make specific credibility findings or otherwise resolve inconsistencies in the record. See Connett, 340 F.3d at 876. However, the Ninth Circuit has made clear that remand simply to permit the ALJ to decide the same issue again is inappropriate. See Garrison, 759 F.3d at 1021-22.

The Court finds that a remand for an award of benefits is appropriate in this case. The record is complete, and the ALJ failed to identify clear and convincing reasons for rejecting Plaintiff's credibility and failed to identify specific and legitimate (and germane) reasons based on substantial evidence in the record for rejecting much of the opinion evidence.

Therefore,

**IT IS ORDERED** that the final decision of the Commissioner is vacated and this case is remanded for an award of benefits. The Clerk of Court shall enter judgment accordingly and terminate this case.

DATED this 26th day of March, 2018.

_____
Michelle H. Burns
United States Magistrate Judge